UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

GENTHERM, INC.,

       Plaintiff,

                             Case No. 24-cv-11793

v.                          Honorable Linda V. Parker

SARGENT & GREENLEAF, INC.,

       Defendant.

_____/

## OPINION AND ORDER DENYING DEFENDANT'S MOTION TO DISMISS (ECF NO. 10)

On July 11, 2024, Plaintiff Gentherm, Inc. ("Gentherm"), an automotive supplier, filed this lawsuit against Defendant Sargent & Greenleaf, Inc. ("S&G"), a manufacturer of security products.  Gentherm filed a First Amended Complaint on September 30, alleging a single breach of contract claim.  (ECF No. 7.)  Gentherm alleges that S&G breached an agreement reached by the parties in mid-2022 to: (a) increase the purchase price of goods previously shipped by Gentherm, retroactive to January 1, 2022, and (b) increase the purchase price of goods subsequently ordered by S&G.

S&G has filed a motion to dismiss Gentherm's breach of contract claim pursuant to Federal Rule of Civil Procedure 12(b)(6).  (ECF No. 10.)  The motion

has been fully briefed.  (ECF Nos. 11, 12.)  Finding the facts and legal arguments sufficiently set forth in the parties' briefs, the Court dispenses with oral argument pursuant to Eastern District of Michigan Local Rule 7.1(f).  For the reasons below, the Court denies S&G's motion.

## I.    Standard of Review

A Rule 12(b)(6) motion tests the legal sufficiency of the complaint.  *RMI Titanium Co. v. Westinghouse Elec. Corp.*, 78 F.3d 1125, 1134 (6th Cir. 1996). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  In deciding whether the plaintiff has set forth a "plausible" claim, the court must accept the factual allegations in the complaint as true.  *Erickson v. Pardus*, 551 U.S. 89, 94 (2007).  This presumption is not applicable to legal conclusions, however.  *Iqbal*, 556 U.S. at 668.  Therefore, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Id*. (citing *Twombly*, 550 U.S. at 555).

Ordinarily, the court may not consider matters outside the pleadings when deciding a Rule 12(b)(6) motion to dismiss.  *Weiner v. Klais & Co., Inc.*, 108 F.3d 86, 88 (6th Cir. 1997) (citing *Hammond v. Baldwin*, 866 F.2d 172, 175 (6th Cir. 1989)).  Nevertheless, the court "may consider the [c]omplaint and any exhibits

attached thereto, public records, items appearing in the record of the case and exhibits attached to [the] defendant's motion to dismiss, so long as they are referred to in the [c]omplaint and are central to the claims contained therein." *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008).

## II.  Factual Background

Gentherm supplies certain components parts to S&G, and has done so since before the COVID-19 pandemic.  (*See* ECF No. 7 at PageID.50 ¶ 10.)  Gentherm experienced increased costs to manufacture these parts following the onset of the pandemic, which it initially absorbed instead of passing them on to its customers.  (*Id.* ¶¶ 10-11.)  However, in October 2021, Gentherm requested that S&G accept a price increase.  (*Id.* ¶ 12.)  In an email, Rai Avery, S&G's Sourcing Manager, agreed to the increase for future orders.  (*Id.* ¶ 13.)  Gentherm subsequently shipped parts to S&G and invoiced S&G for those parts at the increased price, which S&G paid.  (*Id.*)

In 2022, Gentherm experienced unanticipated increased manufacturing costs, leading it to request an additional 3.8% price increase per part from S&G.  (*Id.* at PageID.50-51 ¶¶ 14, 15.)  On June 27, 2022, after a telephone conversation concerning the price changes between Shannon Mitchell from S&G and Iris Hazelwood from Gentherm, Mitchell emailed Hazelwood requesting the updated pricing.  (*Id.*)  The following day, Hazelwood sent Mitchell a letter and product

price increase chart.  (*Id.* ¶ 15; ECF No. 7-1.)  In the letter, Hazelwood requested

that S&G issue purchase orders to:

> 1) increase the purchase price of the products supplied by
> Gentherm in line with the material price and shipping
> increases, retroactive to January 1, 2022; 2) reimburse
> Gentherm for all expedited inbound and outbound
> shipments since January 1, 2022 and as-needed going
> forward; and 3) reimburse Gentherm for all spot buys
> already incurred and as-needed going forward that are
> due to the pandemic-fueled global supply and shipment
> shortages and required to meet your production plans.

(ECF No. 7-1 at PageID.58.)  Avery was copied on the request.  (ECF No. 7 at

PageID.51 ¶ 16.)

A few days later, on June 30, Mitchell communicated to Hazelwood via

email and copying Avery:  "Please accept this email as our approval of the pricing

on the attached."  (ECF No. 7-1 at PageID.63.)  This June 30 email from Mitchell,

like other emails she sent, contained the following disclaimer under her signature

block:

> Sargent and Greenleaf™ accepts no liability for the
> content of this email, or for the consequences of any
> actions taken on the basis of the information provided,
> unless that information is subsequently confirmed in
> writing. Any views or opinions presented in this email
> are solely those of the author and do not necessarily
> represent those of the company.

(*Id.* at PageID.64.)

S&G thereafter sent purchase orders to Gentherm, identifying quantities of parts, which Gentherm then supplied to S&G.  (ECF No. 7 at PageID.52 ¶ 19; *see also* ECF No. 7-1 at PageID.67-74.)  An invoice, which included the increased pricing, was sent to S&G in September 2022.  (*Id*.)  Avery responded in February 2023:  "We agreed to the pricing increase" but not to its retroactive application.  (ECF No. 7 at PageID.52 ¶ 20.)

Despite acknowledging its agreement to the price increase, S&G remitted payment under the older, lower prices for parts shipped from June to September 2022.  (*Id.* at PageID.53 ¶ 21.)  S&G communicated to Gentherm that Mitchell did not have the authority to buy the parts at the increased prices.  (*Id.* ¶ 22.)  However, during the relevant time frame, Mitchell was S&G's designated buyer of Gentherm parts and the primary contact between S&G and Gentherm.  (*Id.* ¶ 23.)  She previously issued purchase orders on behalf of S&G.  (*Id.* ¶ 24.)

## III.   Applicable Law and Analysis

S&G seeks to dismiss Gentherm's breach of contract claim, arguing first that there was no agreement to increase pricing in 2022, as Mitchell's email indicated that S&G "accept[ed] no liability for the content of th[e] email" unless its contents were "subsequently confirmed in writing" and there was no subsequent written confirmation.  S&G next argues that there could be no enforceable contract to increase the price of goods already shipped due to a lack of consideration.  As to

future shipments, S&G argues that no contract was formed because the communications did not convey a quantity.

### A.     Basic Contract Principles

To bring a successful breach of contract claim under Michigan law,[1] the plaintiff must prove that "(1) there was a contract (2) which the other party breached (3) thereby resulting in damages to the party claiming breach." *Stackpole Int'l Engineered Prods., Ltd. v. Angstrom Auto. Grp., LLC*, 52 F.4th 274, 283 (6th Cir. 2022) ("*Stackpole*") (citing *Miller-Davis Co. v. Ahrens Constr., Inc.*, 848 N.W.2d 95, 104 (2014)).  A valid contract requires five elements: (1) parties competent to contract, (2) a proper subject matter, (3) legal consideration, (4) mutuality of agreement, and (5) mutuality of obligation.  *Id.* at 279 (citing *AFT Mich. v. Michigan*, 866 N.W.2d 782, 804 (Mich. 2015); *In re Brown*, 342 F.3d 620, 628 (6th Cir. 2003) (citing *Thomas v. Leja*, 468 N.W.2d 58, 60 (Mich. Ct. App. 1990)); *see also Detroit Tr. Co. v. Struggles*, 286 N.W. 844, 846 (Mich. 1939).  The party seeking to enforce a contract bears the burden of proving that the contract exists.  *See In re Brown*, 342 F.3d at 628 (citation omitted).

"Mutuality of agreement requires 'assent' to [the agreement]'s 'material' terms."  *Stackpole*, 52 F.4th at 280 (citing *Kamalnath v. Mercy Mem'l Hosp.*

---

[1] For purposes of the pending motion, the parties agree to apply Michigan law. (*See* ECF No. 10 at PageID.88 n.5; *see generally* ECF No. 11.)

6

*Corp.*, 487 N.W.2d 499, 503 (Mich. Ct. App. 1992)).  Assent "is judged by an

objective standard, looking to the express words of the parties and their visible

acts, not their subjective states of mind." *Tillman v. Macy's Inc.*, 735 F.3d 453,

459 (6th Cir. 2013) (citation omitted).  Attention must be paid to "the relevant

circumstances surrounding the transaction, including all writings, oral statement[s],

and other conduct by which the parties manifested their intent." *Innotext, Inc. v.

Petra'Lex USA Inc.*, 694 F.3d 581, 589 (6th Cir. 2012) (quoting *Barber v. SMH

(US), Inc.*, 509 N.W.2d 791, 794 (Mich. Ct. App. 1993)).

  "Mutuality of obligation means 'consideration[.]'" *Stackpole*, 52 F.4th at

279 (quoting *Hall v.* Small, 705 N.W.2d 741, 744 (Mich. Ct. App. 2005)).

Generally, "past consideration cannot serve as legal consideration for a subsequent

promise." *McMullen v. Meijer, Inc.*, 355 F.3d 485, 490 (6th Cir. 2004) (citing

*Shirey v. Camden*, 22 N.W.2d 98, 102 (Mich. 1946)).  However, "[u]nder

Michigan law, contracts for the sale of goods—including supplier contracts—are

governed by the Uniform Commercial Code (the UCC), [Michigan Compiled Laws

§] 440.1101 *et seq.*" *MSSC, Inc. v. Airboss Flexible Prods. Co.*, 999 N.W.2d 335,

338 (Mich. 2023) ("*Airboss*").  An agreement to modify a contract governed by the

Uniform Commercial Code does not require consideration.  Mich. Comp. Laws

§ 440.2209(1).  "A party's ability to modify an agreement is limited only by

Article Two's general obligation of good faith." *Roth Steel Prods. v. Sharon Steel Corp.*, 705 F.2d 134, 145 (6th Cir. 1983) (citations omitted).

### B.    S&G's Assent to the Price Increases

Mitchell appears to have agreed to Gentherm's price increases in her June 30 email.  S&G disputes this, relying on the boilerplate language under Mitchell's signature block, indicating that the information contained therein is not binding unless "subsequently confirmed in writing."  S&G maintains that this language reflects its intent not to be bound absent further written agreement.  In support, it relies on *Dhillon v. Zions First Nat'l Bank*, 462 F. App'x 880 (11th Cir. 2012).

The Court is not persuaded by this unpublished out-of-circuit decision. First, courts have denied the effect of such boilerplate language on letters and other documents "unless referred to in the body of the letter or other writing or expressly brought to the offeree's attention."  Williston on Contracts § 6:60 (4th ed.) (collecting cases).  Second, as set forth above, assent is judged by all of the circumstances surrounding the transaction.  *See Innotext, Inc.*, 694 F.3d at 589.  A cased cited by both parties, *Haqqani v. Brandes*, No. 355308, 2021 WL 4932062 (Mich. Ct. App. Oct. 21, 2021), reflects that disclaimer language in an email is just one of many considerations for determining assent.

Gentherm alleges sufficient facts in its First Amended Complaint to render it plausible that S&G assented to the price increases.  This includes that in the past,

8

including recently before the increases at issue, S&G contracted with Gentherm through emails containing the same boilerplate language. This course of dealing alone distinguishes this case from *Dhillon*. In November 2021, Avery accepted via email Gentherm's request for price increases due to the pandemic. In an email communication, Mitchell invited Hazelwood to email the price adjustments for 2022, which they previously had discussed by telephone. Mitchell clearly expressed her approval of the pricing, and Avery later acknowledged S&G's agreement to be bound by the increased prices, even if he disputed whether the price adjustments applied retroactively.

## C. Whether the Agreement for Retroactive Price Increases Fails Due to a Lack of Consideration

As set forth earlier, an agreement modifying a contract for the sale of goods needs no consideration to be binding. Mich. Comp. Laws § 440.2209(1). What is required, however, is good faith. *Roth Steel Prods.*, 705 F.2d at 145. Two inquiries are relevant to deciding whether the good-faith requirement is satisfied. *Id*. at 145-46.

The first inquiry is "whether the party's conduct is consistent with reasonable commercial standards of fair dealing in the trade[.]" *Id.* at 146 (quotation marks and citation omitted). This inquiry, the Sixth Circuit has explained, "is relatively straightforward; the party asserting the modification must demonstrate that his decision to seek modification was the result of a factor, such

as increased costs, which would cause an ordinary merchant to seek a modification of the contract." *Id.* (citations omitted).  Gentherm alleges in its Amended Complaint that it sought the subject price increases in 2022, due to increased manufacturing costs (e.g., severe raw material shortages, inflation, and expedited shipping expenses).

The second inquiry is "whether the parties were in fact motivated to seek modification by an honest desire to compensate for commercial exigencies." *Id.* "Essentially, this inquiry requires the party asserting the modification to demonstrate that [it] was, in fact, motivated by a legitimate commercial reason and that such a reason is not offered merely as a pretext." *Id.* (citation omitted). Nothing in Gentherm's pleadings suggests bad faith.

In short, the lack of consideration does not preclude Gentherm's breach of contract claim.  What is required—good faith—is plausibly supported by the facts in the Amended Complaint.

## D. Whether the Agreement for Retroactive Price Increasing Fails Due to the Alleged Absence of a Quantity Term

Under the UCC's statute of frauds provision, contracts for the sale of goods worth $1,000 or more must be in writing.  *Airboss*, 999 N.W.2d at 338 (citing Mich. Comp. Laws § 440.2201(1)).  "[Q]uantity is the only *essential* term required by the statute of frauds."  *Id.* (citing *In re Frost Estate*, 559 N.W.2d 331, 333 (Mich. Ct. App. 1983)).  If a quantity term is not included, parol evidence "cannot

be offered to supply a missing quantity term." *Id.* (quoting *In re Frost Estate*, 344 N.W.2d at 333) (alterations omitted).  However, if a quantity term is provided but express details sufficient to determine the specific or total quantity are not, "it may be explained or supplemented by parol evidence." *Id.* at 339 (quoting *In re Frost Estate*, 344 N.W.2d at 333).

As the Michigan Supreme Court explained in *Airboss*, "[t]he UCC allows for a contract's quantity to be measured 'by the output of the seller or the requirements of the buyer[.]"  999 N.W.2d at 339 (quoting Mich. Comp. Laws § 440.2306(1)).  "This provision allows for parties to enter into contracts that provide a quantity term but lack specificity as to the total of goods agreed upon." *Id.*  There are three types of contracts that accomplish this: output contracts, requirement contracts, and release-by-release contracts.  *Id.*

Requirement contracts between a buyer and supplier-seller are frequently created by an umbrella agreement or "blanket purchase order." *Airboss*, 999 N.W.2d at 339.  "This umbrella agreement sets forth the terms governing items such as price, length of the contract, warranty details, indemnification, and termination." *Id.* (citation omitted).  It also establishes that the buyer will purchase a set share of its total need from the seller (e.g., "all requirements of the buyer"), which satisfies the statute of frauds.  *Id.* at 339-40.  "To supplement this general

11

term, the buyer will typically later issue 'releases' to let the seller know its specific

short-term requirements." *Id.* at 340.

Release-by-release contracts are similar, in that a blanket purchase order sets

the overall contract terms, and the buyer issues subsequent releases setting forth

the exact quantity it needs. *Id.* However, "unlike a requirements contract, the

blanket purchase order does not set forth the share of the buyer's need to be

purchased from the supplier." *Id.* (citation omitted). The parties intend for the

buyer to purchase quantities of parts only according to its releases, not according to

its requirements. *Id.* "[T]he purchase order is more appropriately thought of as an

umbrella agreement that governs the terms of future contract offers." *Id.* "[T]he

seller is not bound to accept future orders in the same manner as with a

requirements contract," but it "is bound by the terms agreed to in the purchase

order when future releases are issued and accepted." *Id.* (citation omitted). The

terms of such release-by-release agreements "are only enforceable once a firm

quantity is stated, which happens only when a release is issued and accepted." *Id.*

(internal quotation marks and citation omitted).

It is not yet clear which type of supplier contract governs the parties'

relationship here. They certainly entered into some type of supplier contract

setting forth the overall terms of their relationship by which Gentherm had been

supplying parts to S&G for years before Gentherm requested increases in the

previously agreed to pricing.  Even if they had entered into a release-by-release contract, S&G's original purchase orders, issued before Gentherm's request for price increases in mid-2022, set forth the exact quantities of the parts for which Gentherm subsequently sought to be paid more.  While Gentherm asked S&G to issue purchase orders reflecting the increased purchase pricing, the quantity of the parts had not only already been established in earlier purchase orders, but the parts already had been supplied.

For these reasons, the Court does not conclude that the statute of frauds bars Gentherm's breach of contract claim for retroactive price increases.

## IV.    Conclusion

In summary, the Court holds that the boilerplate language in Mitchell's email did not preclude a contract from being validly formed by which S&G agreed to Gentherm's requested price increases.  The Court further holds that the agreement does not fail for lack of consideration or incomplete terms.

Accordingly,

**IT IS ORDERED** that S&G's motion to dismiss (ECF No. 10) is **DENIED**.

s/ Linda V. Parker
LINDA  V. PARKER
U.S. DISTRICT JUDGE

Dated: July 9, 2025

I hereby certify that a copy of the foregoing document was mailed to counsel of record and/or pro se parties on this date, July 9, 2025, by electronic and/or U.S. First Class mail.

s/Aaron Flanigan

Case Manager